UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND RIVERA,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION LLC; and GFS II LLC d/b/a GATEWAY FINANCIAL SOLUTIONS,<br><br>    Defendants. | **Case No.:** 1:21-cv-03023<br><br>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC § 1681** *et seq.* |

Plaintiff Raymond Rivera ("Plaintiff"), through his attorneys, alleges the following against Defendants Equifax Information Services, LLC ("Equifax"); Trans Union LLC ("Trans Union"); and GFS II LLC d/b/a Gateway Financial Solutions ("Gateway"):

## INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Trans Union and Equifax, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report.

2. Plaintiff's Complaint also alleges violations of the FCRA, against Defendant Gateway for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Trans Union, Equifax, and non-party Experian.

## JURISDICTION AND VENUE

3. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

1

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Defendants transact business here; as such, personal jurisdiction is established.

## PARTIES

6. Plaintiff Raymond Rivera is a natural person residing in the city of Beecher in Will County, Illinois.

7. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

9. Defendant Trans Union is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

10. Upon information and belief, Defendants Trans Union, and Equifax (referenced together as "the CRA Defendants") disburse *consumer reports* to third parties under contract for monetary compensation.

11. Defendant Gateway Financial Solutions is a financial institution engaged in the business of giving credit and collecting debt. Gateway is also a *furnisher*, as contemplated in 15 U.S.C. § 1681s-2. Upon information and belief, Gateway is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Gateway is headquartered at 999 S. Washington Ave Suite 1, Saginaw, MI 48601.

12. At all relevant times, Defendants Gateway, Trans Union, and Equifax, acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

13. Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

14. The CRA Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

15. The CRA Defendants' consumer reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings;

and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. The CRA Defendants gain access to consumer information from various sources, including furnishers who provide consumer information to the CRAs, and information the CRAs independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER and Lexis-Nexis.

17. The information reported by the CRA Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer reports.

18. The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon consumer reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

19. These algorithms use variables or "attributes" derived from the consumer report to calculate a "credit score," which ultimately determines consumer creditworthiness.

20. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

21. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

22. The more severe, recent, and frequent late payments are, the greater the harm to a consumer's FICO Score.

23. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

24. The CRA Defendants obtained Plaintiff's consumer bankruptcy information and reported it in both the Public Records section of his consumer credit report, as well as the individual account tradelines.

25. The CRA Defendants are well aware of the effect of a reaffirmation of debt, which excludes the debt from the bankruptcy discharge and the consumer remains liable for the debt and continued payments on the debt, because the account remains open.

26. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources the CRA Defendants obtain consumer bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information, including notice of a reaffirmation or continued payments reporting to the CRA Defendants after the bankruptcy filing.

27. In this case, Plaintiff also specifically notified the CRA Defendants that the debt was reaffirmed, but the CRA Defendants rejected this specific notice, despite also possessing independent information, and otherwise having the information reasonably available from the same sources of information the CRA Defendants procured Plaintiff's bankruptcy case information. Instead, the CRA Defendants failed to verify this disputed information despite notice and followed unreasonable procedures that ignored the information with the CRA

Defendants' possession, ignored Plaintiff's notice, and instead blindly relied on the furnisher's own unreasonable "investigation."

28. Rather than following reasonable procedures to assure maximum possible accuracy, the CRA Defendants inaccurately report information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by the CRA Defendants, provided to them by Plaintiff, communicated to them by account/tradeline furnishers (e.g. information reflecting continued, monthly payments), or available in the public court records that the CRA Defendants have obtained through their independent efforts, or could easily obtain through the same reasonably available public records.

29. The CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including those pertaining to inaccurate account and payment statuses, and failing to verify the status of accounts, including reaffirmed accounts, even after notice from the consumer, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

30. In or around May 2017, Plaintiff obtained a loan for an automobile from Gateway, account number starting in 2001********* ("the Account").

31. On or about August 30, 2019, Plaintiff filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, case no. 19-24802.

32. The CRA Defendants were accurately reporting Plaintiff's Bankruptcy filing and his discharge in the public records section of his credit report.

33. On or about July 20, 2020 Plaintiff reaffirmed Plaintiff's obligations under the Account, whereby Plaintiff remained personally liable and responsible for continued payment on the Account. The Account was therefore not included in Plaintiff's bankruptcy discharge.

34. Plaintiff received a discharge in bankruptcy court on or about September 9, 2020.

35. Plaintiff filed for bankruptcy and reaffirmed the Account to rebuild and improve his credit.

36. After Plaintiff's bankruptcy was discharged, Plaintiff was eager to obtain a "fresh start."

37. Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained his Experian, Equifax, and Trans Union consumer reports to ensure that his credit accounts and bankruptcy were being reported accurately.

38. Plaintiff learned that the CRA Defendants and non-party Experian were inaccurately reporting Plaintiff's reaffirmed Account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the account was discharged or non-current/non-paid even though Plaintiff continued to make ongoing payments on the Account.

39. Before filing for bankruptcy, Plaintiff made payments and was current on the Account.

40. Plaintiff reaffirmed the Account during bankruptcy, remaining personally liable for the obligation and the Account was indisputably not discharged. Plaintiff did this to maintain some of his credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account.

41. However, when Plaintiff pulled his consumer reports, Plaintiff discovered that non-party Experian and Defendants Trans Union and Equifax were not reporting the Account's accurate payment history despite reaffirmation of the debt.

42. The CRA Defendants were reporting the Account as included in bankruptcy despite the Account being reaffirmed.

43. Non-party Experian's and the CRA Defendants' reporting was patently false and materially misleading, as the Account was reaffirmed and not discharged by Plaintiff's bankruptcy. In fact, Plaintiff paid the Account in full, which Plaintiff believes was also reported to the CRA Defendants and non-party Experian.

44. Non-party Trans Union and the CRA Defendants failed to report the accurate payment history and subsequent full payment status of the Account, but continued to report inaccurate payment statuses that indicated the Account was included in and/or discharged in bankruptcy.

45. On or about January 30, 2021, Plaintiff sent letters to Trans Union, Equifax, and non-party Experian disputing their inaccurate reporting of the Account.

46. The letters specifically advised that Plaintiff did not include the Account in his bankruptcy, remained personally obligated for the Account, and that by that point in time the account had been paid in full.

47. Upon information and belief, Trans Union, Equifax, and non-party Experian received Plaintiff's dispute letters.

48. Upon information and belief, non-party Experian and the CRA Defendants forwarded Plaintiff's disputes to Gateway within 5 business days of receipt.

49. Defendant Equifax responded to Plaintiff's dispute on or about March 29, 2021. In Equifax's response, it stated that it investigated Plaintiff's dispute and would continue to report the Gateway account as included in bankruptcy.

50. Defendant Trans Union did not proffer a response and did not correct its reporting of the Account. Instead, Trans Union continued to inaccurately report the Account as included in bankruptcy.

51. Upon information and belief, Defendants Trans Union and Equifax did not investigate Plaintiff's disputes. Instead, pursuant to their unreasonable procedures, the CRA Defendants merely forwarded an automated dispute form to Gateway, despite possessing independent information indicating the Account was reaffirmed, and/or the ability to independently verify the Account reaffirmation through the same sources it receives consumer bankruptcy information.

52. Rather than perform an investigation based on Plaintiff's disputes, reasonably available public records, and information known by the CRA Defendants through Plaintiff's reported payment history regarding on the Account, Trans Union and Equifax merely parroted the inaccurate information furnished by Gateway despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

53. Upon information and belief, Gateway failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Trans Union and Equifax, despite, upon information and belief providing accurate information to non-party Experian.

54. Gateway failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Gateway continued to furnish inaccurate data to Defendants Trans Union and Equifax despite knowledge of Plaintiff's dispute and otherwise possessing information from which Gateway should have reported accurate information about the Account.

55. As a result of all Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

56. Upon information and belief, had Defendants Trans Union and Equifax accurately reported the Account as a positive account with a positive payment history, Plaintiff's credit score and credit worthiness would have been better.

57. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

58. Upon learning of the continued inaccurate reporting, Plaintiff began to dwell on the inaccurate reporting causing him to have trouble sleeping and concentrating at work.

59. Upon information and belief, Plaintiff applied for credit and was denied credit with Capital One, Turner Acceptance Corp, GFS II, LLC, Heritage Acceptance, Regional Acceptance Corp, Prestige Financial, Avid Acceptance LLC, Economy Auto Mart, and Pearl Chrysler Dodge due to Defendant's inaccurate reporting which was published to all said creditors in their review of Plaintiff's application.

60. Upon information and belief, Plaintiff applied for and was approved credit at less favorable rates with Consumer Portfolio Services due to Defendant's inaccurate reporting which was published to Consumer Portfolio Services in its review of Plaintiff's application.

. **COUNT I**
**The CRA Defendants, Trans Union and Equifax**
**(Violations of the FCRA, 15 U.S.C. § 1681e(b) and § 1681i)**

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. The FCRA requires credit reporting agencies, like Trans Union and Equifax, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

63. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when placed on notice that the information they are reporting is inaccurate, and/or otherwise contradicted by information known by the CRA Defendants or reasonably available to them.

64. The CRA Defendants knew or should have known of their obligations under the FCRA. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving the CRA Defendants from which they are on notice of their unreasonable procedures concerning the reporting of debts during and after bankruptcy, including reaffirmed debts.

65. Upon information and belief, Defendants Trans Union and Equifax regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

66. Upon information and belief, Defendants Trans Union and Equifax voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

67. The diligence the CRA Defendants exercise in recording consumer bankruptcy filings is not replicated in their reporting of the effect of bankruptcy proceedings and orders upon certain accounts, including, the status of accounts that are reaffirmed, despite Defendants' knowledge thereof.

68. Consequently, the CRA Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when the CRA Defendants possess information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

69. The CRA Defendants therefore negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to Plaintiff.

70. The CRA Defendants inaccurately reported Plaintiff's reaffirmed Account as included in Plaintiff's bankruptcy when Plaintiff continued to make timely payments on the Account, and remained liable for the Account, which was excluded from his discharge.

71. The CRA Defendants possessed information from the same sources of consumer bankruptcy information, and/or from the furnisher, that Plaintiff reaffirmed the Account. Additionally, information concerning reaffirmation agreements is reasonably available from the same sources of consumer bankruptcy information Defendants procure.

72. The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain and anguish, a decreased credit score. Moreover, the inaccurate reporting of Plaintiff's Account has deprived Plaintiff of credit opportunities and resulted in credit denials.

73. Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, Trans Union and Equifax continued to inaccurately report the reaffirmed Account as "included in bankruptcy," despite notice that the Account was

reaffirmed, and the ability to independently confirm Plaintiff's dispute that the Account was reaffirmed.

74. The CRA Defendants therefore failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, when, as here, the CRA Defendants possessed the information confirming that the Account was reaffirmed, including information concerning continued payments, and/or specific notice from Plaintiff.

75. The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that Plaintiff reaffirmed the Account following Plaintiff's dispute, which information is reasonably available from the same sources they procure consumer bankruptcy information.

76. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

77. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

78. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

79. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants additionally violated the

13

FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified the CRAs of the inaccurate information reported in Plaintiff's credit file.

80. Defendants Trans Union and Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

  i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

  ii. Failing to consider all relevant information while investigating Plaintiff's dispute.

  iii. Failing to include all relevant information when notifying Gateway of Plaintiff's dispute.

81. Instead of reasonably reinvestigating Plaintiff's dispute, Defendants Trans Union and Equifax did not respond to Plaintiff's dispute and continued to report the reaffirmed Account as included in Plaintiff's bankruptcy.

82. The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

83. The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

84. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

85. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

86. The CRA Defendants are a direct and proximate cause of Plaintiff's damages.

87. The CRA Defendants are a substantial factor in Plaintiff's damages.

88. Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*.

## COUNT II
### Defendant Gateway
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

89. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

90. The FCRA requires that furnishers of information like Gateway to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

91. Gateway knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Gateway obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Gateway acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

92. Plaintiff disputed the Gateway tradeline through all three national CRAs: non-party Experian and Defendants Trans Union and Equifax.

93. Thereafter, the credit reporting agencies forwarded Plaintiff's dispute to Gateway, notifying Gateway that Plaintiff was disputing the information it had furnished about the Account.

94. Gateway received notice of Plaintiff's disputes and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

95. Gateway continues to furnish inaccurate information about Plaintiff to the CRAs, even though Gateway possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

96. The inaccurate Gateway Account materially and adversely affects Plaintiff's credit standing.

97. On at least one occasion within the past two years, by example only and without limitations, Defendant Gateway violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Equifax, Trans Union, and non-party Experian.

98. Gateway violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

16

(e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

99. Gateway unreasonably refused to take corrective measures required by the FCRA to correct and/or update the information it furnished about Plaintiff's Account to the national consumer reporting agencies.

100. Gateway is a direct and proximate cause, as well as substantial factor, in causing damage and harm to Plaintiff.

101. Consequently, Gateway is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law.

102. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Raymond Rivera respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## VERIFICATION OF PLAINTIFF

I, Raymond Rivera, declare as follows:

1)  I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Illinois.

2)  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint and, if called on to testify, I would competently testify as to the matters stated herein.

3)  Pursuant to 28 U.S. Code § 1746, I verify under penalty of perjury under the laws of the United States of America that the Factual allegations/statements in this Complaint concerning myself, my activities, and my intentions are true and correct, to the best of my knowledge and recollection.

Executed on: 5/20/2021

_____
Raymond Rivera

Respectfully submitted this 4th day of June 2021,

By: <u>*/s/ Syed Hussain*</u>
Syed H. Hussain, Esq. (IL #6331378)
PRICE LAW GROUP, APC
420 E Waterside Dr #3004
Chicago, IL 60601
T: (818) 600-5535
E: syed@pricelawgroup.com

*Attorneys for Plaintiff*
*Raymond Rivera*